**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DANA TANNATT, <br><br> Plaintiff, <br><br>      v. <br><br> VARONIS SYSTEMS, INC., <br><br> Defendant. | Civil Action No. 1:18-cv-12589-JGD |

**<u>VARONIS'S MEMORANDUM IN SUPPORT OF ITS</u>**
**<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**
**<u>AND COMPEL ARBITRATION</u>**

Defendant Varonis Systems, Inc. ("Varonis"), by and through its undersigned counsel, hereby submits its Memorandum in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Compel Arbitration:

## I.  INTRODUCTION

Plaintiff Dana Tannatt ("Plaintiff"), a former Varonis employee, expressly agreed to arbitrate "all employment related disputes" and "any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder or benefit plan of the Company, in their capacity as such or otherwise), whether brought on an individual, group, collective or class basis, arising out of, relating to, or resulting from my employment with the Company, including any breach of this agreement."  "At-Will, Employment, Confidential Information, Invention Assignment, and Arbitration Agreement" ("Agreement"), Section 12(A).[1]

Plaintiff now seeks to avoid his agreement to arbitrate these claims by bringing

---

[1] The Agreement is attached to both Exhibits 1 (Complaint) and  2 (JAMS Demand for Arbitration) of Varonis' Notice of Removal, ECF No. 1.  The version attached to the JAMS Demand for Arbitration is complete, and in the correct order.

this suit.  The arbitration agreement is a binding, enforceable contract.  Therefore, this court does

not have subject matter jurisdiction, and Plaintiff's claims should be dismissed and compelled to

arbitration.

## II.    STATEMENT OF FACTS

### A.    The Business of Varonis

Varonis is a  provider of security software solutions.  Complaint, ¶¶ 9-12.[2]

Varonis' products allow organizations to analyze, secure and manage access and permissions to

their data, audit user access, and perform other functions to keep sensitive data secure.  *Id.* at ¶

3.  Varonis is a Delaware corporation with its principal place of business in New York, New

York.  *Id.* at ¶  2.

### B.    Plaintiff's Employment

Plaintiff was hired by Varonis in December 2011.  *Id.* at ¶  4.  During his

employment, Plaintiff was a sales engineer, manager of sales engineering, and senior sales

engineer.  *Id.* at ¶¶ 9-12.  Plaintiff's  responsibilities included demonstrating and implementing

Varonis's software for Varonis's customers and potential customers.  *Id.* at ¶ 9.

In July 2018, Plaintiff resigned from his position at Varonis.  *Id.* at ¶ 15.  Plaintiff

subsequently went to work for SailPoint Technologies, Inc. as a sales engineer.  *Id.*

### C.    Arbitration Agreement

Varonis required Plaintiff to sign Varonis's "At-Will, Employment, Confidential

Information, Invention Assignment, and Arbitration Agreement" (the "Agreement") in

consideration for his employment.  The Agreement includes a confidentiality provision, a non-

competition provision, a non-solicitation of customers provision, and a non-solicitation of

---

[2] Plaintiff's Complaint is attached as Exhibit 1 to Varonis' Notice of Removal, ECF No. 1.

employees provision.  *Id.* at Sections 2(A), 2(B), 7.  The Agreement also includes an arbitration agreement.  *Id.* at Section 12.

**D.**     Key Terms of Arbitration Provision

Under the arbitration provision of the Agreement, Plaintiff agreed to arbitrate "all employment related disputes" and "any and all controversies, claims, or disputes . .. arising out of, relating to, or resulting from my employment with the Company, including any breach of this agreement."   Agreement, Section 12(A).

The arbitration provision of the Agreement has the following key terms, which provide for a fair arbitration for both parties:

- Mutuality.  The agreement requires arbitration of all covered disputes, whether the charging party is the employee or Varonis.  *Id.*, Section 12(A).

- Neutral Arbitrator and Procedures.  The agreement provides that the arbitration will be administered pursuant to Judicial Arbitration & Mediation Services, Inc. ("JAMS")' employment arbitration rules and procedures.  *Id.*, Section 12(B).

- Application of New York law.  The agreement provides that New York law will apply to any dispute under the Agreement.  *Id.*

- Remedies Available.  The agreement provides that the arbitrator has the power to award any remedies available under applicable law, with the exception of punitive damages.  *Id.*

**E.**     Varonis' Initiation of Arbitration

In August 2018, pursuant to the Agreement, Varonis filed a Demand for Arbitration before JAMS.  Complaint, ¶ 18.   To date, Plaintiff has refused to voluntarily participate in the JAMS arbitration in New York.  *Id.* at ¶ 19.

### III.    ARGUMENT

#### A.    This Dispute is Governed by the Federal Arbitration Act

The arbitrability of Plaintiff's claims is governed by the Federal Arbitration Act ("FAA"), which applies to all contracts involving interstate commerce, subject to certain exceptions that are not applicable in this case.  9 U.S.C. § 1 *et. seq.*  "Interstate commerce" is construed broadly and clearly governs an employer's business that operates in several states, as is the case here.  *Graphic Scanning Corp. v. Yampol*, 850 F.2d 131,133 (2d Cir. 1988).  During his employment at Varonis, Plaintiff worked with Varonis' customers in the New England region, which spans several states.  Complaint, ¶ 8.  Thus, the FAA governs this motion to compel arbitration.

#### B.    Public Policy Favors Enforcing Arbitration Agreements

Federal law expresses a strong public policy favoring arbitration.  *See Preston v. Ferrer*, 552 U.S. 346, 352-53 (2008).  Under the FAA, arbitration is proper when there is a valid written agreement covering the asserted claims.  9 U.S.C. § 2.  Arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id.*  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Guided by the FAA, the U.S. Supreme Court has repeatedly held that arbitration agreements are to be read liberally to affect their purpose and are to be "rigorously enforced." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25; *Anderson v. Comcast, Corp.*, 500 F.3d 66 (1st Cir. 2007).  Questions of arbitrability must be addressed with a "healthy regard" for the federal policy favoring arbitration.  *See Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524 , 528 (1st Cir. 1998) (internal citation omitted).

**C.**     The Arbitration Agreement is Valid and Enforceable.

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issues comes within the scope of the arbitration agreement." *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re: Overseas Ltd v. Central United Life Insurance Co.*, 307 F.3d 24, 28 (2d Cir. 2002)); *Hartford Accident Indemnity Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219, 226 (2d Cir. 2004).

While state law is applied to determine if the parties have entered into an arbitration agreement, its application is limited to "generally accepted principles of contract law." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987); *Gonder v. Dollar Tree Stores, Inc.*, 144 F.3d 522, 526 (S.D.N.Y. 2015).  That is because, under the FAA, "[a]n agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law*." *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (emphasis in original).  "[S]tate law, whether of legislative or judicial origin, is applicable [in a FAA action] if that law ... govern[s] issues concerning  the validity, revocability, and enforceability of contracts generally" *Id.*

Here, the Agreement has a New York choice of law provision, and Varonis has its principal place of business in New York.  Agreement, Section 13(a); Complaint, ¶  3.  Thus, New York law governs the enforceability of the arbitration provision.  *See, e.g., Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 366 (2d Cir. 2003) (noting that a New York choice of law provision would be enforceable if the company's principal place of business was in New York, because it would create significant contacts with the state).

Both the Supreme Court and the Second Circuit have repeatedly held that any doubts concerning the arbitrability of a dispute should be resolved in favor of arbitration.  *See,*

*e.g., Moses H. Cone Memorial Hospital  v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983); *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003).  Arbitration should be compelled "unless it can be said with positive assurance" that there is not any plausible interpretation of the arbitration provision that covers the dispute.  *Chung v. President Enters. Corp.*, 943 F.2d 225, 230 (2d Cir. 1991) (internal quotations and citations omitted).

      1.    <u>Plaintiff Entered Into a Valid Agreement to Arbitrate</u>

Here, it is clear that the parties entered into a valid arbitration agreement.  First, under New York law, an offer of employment is sufficient consideration for an arbitration agreement.  *See, e.g., Coffer v. Serv. Asset Mgmt. Co.*, No. 02 Civ. 9934 DC, 2003 U.S. Dist. LEXIS 19676, at *9-10 (S.D.N.Y. Oct. 31, 2003).  Second, the Agreement clearly provides that the parties agree to arbitrate their disputes.  Specifically, Plaintiff agreed to the following:

> IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, COLLECTIVE OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION.

*See* Agreement, Section 12.

The Agreement also includes the following language:

> Voluntary Nature of Agreement.  I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE

INFLUENCE BY THE COMPANY OR ANYONE ELSE.  I
FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE
CAREFULLY READ THIS AGREEMENT AND THAT I HAVE
ASKED ANY QUESTIONS NEEDED FOR ME TO
UNDERSTAND THE TERMS, CONSEQUENCES, AND
BINDING EFFECT OF THIS AGREEMENT AND FULLY
UNDERSTAND IT, INCLUDING THAT I AM WAIVING MY
RIGHT TO A JURY TRIAL.  FINALLY, I AGREE THAT I
HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE
ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE
SIGNING THIS AGREEMENT.

Plaintiff explicitly acknowledged that he carefully read the Agreement and asked

any questions he needed to ask to fully understand its terms.  Thus, it is clear that there is a valid

agreement to arbitrate.

2.      Plaintiff's Claims are Covered by the Agreement

Plaintiff agreed to arbitrate "all employment related disputes" and "any and all

controversies, claims, or disputes with anyone (including the Company and any employee,

officer, director, shareholder or benefit plan of the Company, in their capacity as such or

otherwise), whether brought on an individual, group, collective or class basis, arising out of,

relating to, or resulting from my employment with the Company, including any breach of this

agreement."  Agreement, Section 12(A).  Plaintiff seeks to invalidate the Agreement in its

entirety, and specifically seeks declaratory relief preventing Varonis from enforcing the

restrictive covenants in the Agreement.  These disputes clearly fall under the scope of the

arbitration agreement, as they relate directly to Plaintiff's employment.  Furthermore, the key

clauses of the Agreement are the restrictive covenants, and thus the arbitration provision was

clearly intended to encompass disputes involving restrictive covenants.  Finally, there is already

a pending arbitration before JAMS, in which Plaintiff could potentially obtain the same relief he

seeks here.  It is a much more efficient use of the court's resources for all issues to be resolved in

the pending arbitration.

3.      Plaintiff's Arguments That The Agreement is Unenforceable Are
Meritless

In his Complaint, Plaintiff argues that the Agreement is unenforceable for a few

reasons, none of which are valid.  First, Plaintiff argues that the Agreement is invalid because it

was not re-entered into when he was promoted and/or changed job positions.  *See* Complaint, ¶

17.  New York law provides that initial employment is sufficient consideration for both

arbitration agreements and restrictive covenant agreements.  *See, e.g., Coffer*, 2003 U.S. Dist.

LEXIS 19676, at *9-10; *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 223 (S.D.N.Y. 2013).

Furthermore, Varonis has not found any case law that indicates New York law recognizes the

material change doctrine upon which Plaintiff relies.  Additionally, even if Massachusetts law

applies (which Varonis contends it does not), New York courts applying Massachusetts law have

held that the material change doctrine would not apply to facts such as those here.  For example,

in  *Leibowitz v. Aternity, Inc.*,  the court analyzed the validity of a non-compete agreement under

Massachusetts law.  No. 10 CV 2289 (ADS)., 2010 U.S. Dist. LEXIS 70844, at *56-57(E.D.N.Y.

July 14, 2010).  The court noted that under Massachusetts law, each time an employee's

employment relationship changes materially such that they have entered a new employment

agreement, a new restrictive covenant must be signed.  *Id.* at *56.  This rule applies where "'the

conduct of the parties clearly showed that they had abandoned and rescinded by mutual consent

the earlier employment agreement containing the pertinent non-compete provision and had

entered into a new employment relationship that included no such non-compete provision.'" *Id.*

(quoting *Intertek Testing Servs. N.A., Inc. v. Curtis-Strauss LLC*, No. 98-903-F, 2000 Mass.

Super. LEXIS 354, at *20-21 (Mass. Super. Ct. Aug. 8, 2000)).  In *Leibowitz*, the employer

entered into three revised compensation plans that changed the plaintiff's compensation, sales

quota, and sales territory, and did not have the employee sign a new non-compete agreement.

8

*Leibowitz,* 2010 U.S. Dist. LEXIS 70844, at *57.  The agreement at issue stated, ""[a]ny subsequent change or changes in [Leibowitz's] duties, salary or compensation will not affect the validity or scope of this Agreement."  *Id.* at *57-58.  The court held that there was no indication the parties abandoned the non-compete provision when they entered into the revised compensation plans, a conclusion further supported by the explicit language in the non-compete agreement that changes in duties, salary, or compensation would not affect the validity of the agreement.  *Id.*  The facts here mirror those in *Leibowitz*.  There is no indication that the parties abandoned the Agreement when Plaintiff's job duties or compensation details changed.  Just as in *Leibowitz*, the Agreement contains explicit language stating that changes in job duties or compensation does not affect the validity of the Agreement.  Indeed, the language in the Agreement is identical to the language in *Leibowitz* -  "Any subsequent change or changes in my duties, salary, or compensation will not affect the validity of scope of this Agreement."  Agreement, Section 13(c).  Thus, even under Massachusetts law, the material change doctrine does not apply here, and the Agreement is valid.

Plaintiff also argues that the various aspects of the arbitration make it such that he cannot effectively access the arbitration proceedings.  However, Plaintiff explicitly agreed to the Agreement, which included an arbitration provision with a New York choice of venue.  As mentioned above, this dispute has significant contacts with New York because, among other reasons, Varonis has its principal place of business in New York.  Lastly, as mentioned above, the arbitration provision includes numerous elements to ensure for a fair proceeding, including a neutral arbitrator, use of the JAMS Rules, and all remedies available under applicable law, with the exception of punitive damages.  Agreement, Sections 12(A), (B).

Finally, Plaintiff argues that Massachusetts's recently enacted noncompetition law precludes enforcement of the Agreement.  The Massachusetts Noncompetition Agreement Act explicitly states that it shall only apply to employee noncompetition agreements entered into on or after October 1, 2018.  Mass. Gen. Laws  c. 149, § 24L, Section 71.  Plaintiff's Agreement was entered into in December 2011 and, thus, is not governed by the new statute.

### D.   Arbitrability Should be Decided by the Arbitrator

Furthermore, the issue of arbitrability should be decided by the arbitrator, and not by the court.[3]  The Agreement delegates broad powers to the arbitrator, including the power to decide any motions brought by any party, including motions to dismiss.  Agreement, Section 12(B).  The Agreement states that any arbitration will be administrated pursuant to JAMS' Employment Arbitration Rules ("Rules").  The Rules provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and rule on by the Arbitrator.  Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary manner.

Rule 11(b). Courts have consistently upheld arbitration agreements' delegation of the question of arbitrability to the arbitrator in similar scenarios.  For example, in *Arshad v. Transp. Sys., Inc.*, the arbitration agreement at issue required arbitration to be administrated under the American Arbitration Association's Commercial Rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  183 F. Supp. 3d 442, 447 (S.D.N.Y.

---

[3] State law governs the question of whether the parties agreed to arbitrate arbitrability.  *Sidell v. Structured Settlement Invs., LP*, No. 3:08-cv-00710 (VLB), 2009 U.S. Dist. Lexis 2244, at * 6 (D. Conn. Jan. 14, 2009).

2016).  The court  found to be "clear and unmistakable evidence" that the arbitration provision

delegated the question of arbitrability to the arbitrator.  *Id.*  Here, the situation is the same.  The

Agreement requires the arbitration to be administrated under the Rules, which delegate questions

of arbitrability to the arbitrator.

IV.      **CONCLUSION**

For the reasons stated herein, the Agreement is valid and enforceable, and thus

Plaintiff's claims are subject to mandatory arbitration.  As such, this Court lacks subject matter

jurisdiction.  *See, e.g., Sidell*, 2009 U.S. Dist. LEXIS 2244, at *8 (dismissing the case in favor of

the JAMS' arbitrator's jurisdiction, and compelling arbitration).  Therefore, Varonis respectfully

requests that the court grant its motion to dismiss for lack of subject matter jurisdiction and

compel arbitration.


Dated:  December 24, 2018

Respectfully submitted:

*/s/ Jaclyn M. Essinger*

William M. Taylor, BBO #624981
Jaclyn M. Essinger, BBO #679695
PEPPER HAMILTON LLP
125 High Street
19th Floor, High Street Tower
Boston, MA 02110-2736
617-204-5100
taylorw@pepperlaw.com
essingerj@pepperlaw.com

Jessica X. Rothenberg*
PEPPER HAMILTON LLP
620 Eighth Avenue, 37th Floor
New York, NY 10018-1405
212-808-2731
rothenbergj@pepperlaw.com

*to seek admission pro hac vice*

*Attorneys for Defendant Varonis Systems, Inc.*

11

## CERTIFICATE OF SERVICE

I, Jaclyn M. Essinger, hereby certify that on December 24, 2018 a true and correct copy of the foregoing document was served via First Class, U.S. Mail, postage prepaid upon counsel of record as follows:

>Jack K. Merrill
>KSR Law
>160 Gould Street, #102
>Needham, MA 02494

>_/s/ Jaclyn M. Essinger_____
>Jaclyn M. Essinger (BBO#679695)