UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A.  NO. 1:18-cv-12589-JGD

DANA TANNATT
                Plaintiff

v.

VARONIS SYSTEMS, INC.
                Defendant

## DANA TANNATT'S OPPOSITION TO MOTION BY VARONIS SYSTEMS, INC. TO DISMISS AND COMPEL ARBITRATION

Now comes the Plaintiff, Dana Tannatt, and opposes the motion by Varonis Systems, Inc. to dismiss the current action and order arbitration. As grounds, Mr. Tannatt contends in sum that,

1. He is entitled to pursue his Complaint for declaratory relief under Massachusetts law as a matter of right;

2. No valid contract exists between the parties, since Varonis did not sign the 2011 Agreement on which it relies and, in any event, Mr. Tannatt's job materially changed several times during his employment; and

3. The terms of Varonis's 2011 Agreement are unconscionable and will preclude Mr. Tannatt from defending himself against Varonis's effort to bar him from working.

For each and all of these reasons, Mr. Tannatt asks this court to deny Varonis's motion to dismiss and to order arbitration. In support, he submits the facts and arguments that follow.

## I.    Facts

By Complaint filed early in November 2018, Mr. Tannatt sought declaratory relief under Mass. Gen. L. ch. 231A. The suit followed Varonis's attempts to initiate with JAMS a New York

1

City arbitration proceeding to which Mr. Tannatt objected. He sought dismissal of the arbitration under JAMS's Policy on Employment Arbitration Minimum Standards of Procedural Fairness. The Standards provide that "access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration." JAMS appointed an arbitrator to whom it deferred on the application of its Standards.

The agreement on which Varonis relies for its motion to compel arbitration is attached to the Complaint as <u>Exhibit A</u>. It was signed only by Mr. Tannatt, not Varonis, on December 13, 2011. <u>2011 Agreement</u>, Exh. A to Complaint. Its arbitration provision applies to employment disputes and breaches of the agreement, among other matters. <u>Agreement, ¶12A</u>. It its arbitration demand, Varonis alleges that Mr. Tannatt is barred by the Agreement from working for his current employer, SailPoint Technologies, Inc. It seeks an order compelling him to resign, though it did not seek preliminary relief and Mr. Tannatt has now been employed at SailPoint for about six months. Varonis seeks relief only as work restrictions in the 2011 Agreement.

Throughout his employment, Mr. Tannatt worked from his home in North Andover. <u>Complaint</u>, ¶5. After about three years as a sales engineer, he was promoted in 2015 to manager of sales engineering. Mr. Tannatt's salary increased and he began supervising four employees; his sales engineering work decreased. Mr. Tannatt did not sign a new noncompete agreement when he was promoted. <u>Complaint</u>, ¶11. About a year later, he resigned his management position, causing his commission structure to change. He did not sign a new noncompete agreement <u>Complaint</u>, ¶12. In January 2018, Mr. Tannatt was assigned a new sales representative who he was required to train. His sales production dropped substantially as a result, causing his pay to be reduced, and Mr. Tannatt consequently began to look for a new job. On July 1, 2018, he began work for SailPoint in Massachusetts. <u>Complaint</u>, ¶¶13-16.

II.     Arguments

**A. Mr. Tannatt is Entitled to Pursue his Declaratory Judgment Suit as a Matter of Right under Massachusetts Law, and that Right is not Subject to Arbitration.**

Varonis's motion to dismiss Mr. Tannatt's lawsuit and compel him to arbitrate the claims it seeks to arbitrate in New York is a legal non-starter. Notwithstanding either the validity of the 2011 arbitration agreement on which Varonis relies or the merits of its efforts to enforce that document's restrictive covenants, Mr. Tannatt is entitled as a matter of right to file and pursue to conclusion his Declaratory Judgment lawsuit. Varonis's arbitration language, even if it were enforceable against Mr. Tannatt, simply does not apply to this lawsuit. Indeed, Varonis doesn't even seek to arbitrate Mr. Tannatt's claims here, and its motion to dismiss and for an order compelling arbitration should consequently be denied.

"In any case in which an actual controversy has arisen and is specifically set forth in the pleadings," Massachusetts residents are entitled to seek relief pursuant to its Declaratory Judgment Statute. Mass. Gen. L. ch. 231A, §1. Jurisdiction rests in the superior and other courts of the Commonwealth, and contract matters like the one at issue here are expressly subject to the statute. "The procedure under section one may be used to secure determinations of right, duty, status or other legal relations under deeds, wills or written contracts or other writings constituting a contract or contracts or under the common law, or a charter, statute, municipal ordinance or by-law, or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination." Mass. Gen. L. ch. 231A, §2. See Sears, Roebuck & Co. v. Sch. Comm. of Burlington, 3 Mass. App. Ct. 399, 400 (1975) (bidder's suit challenging award of public contract to another stated an actual controversy subject to Chapter 231A).

Nothing in the Declaratory Judgment statute provides for arbitration, and for good reason. Arbitration would vitiate the right of Massachusetts residents to have their disputes resolved by a court. Regardless of the merits of Varonis's claims or, for that matter, of Mr. Tannatt's contention that the 2011 Agreement is void, he is entitled to judicial determination in this venue. Indeed, Mr. Tannatt pursues that right solely because Varonis seeks to drag him to a foreign venue where he cannot effectively defend himself. Rather than await the outcome of a New York proceeding he may later be forced to defend against in Massachusetts, Mr. Tannatt employs Chapter 231A to determine his rights. He seeks merely to defend himself against a contract he believes is void. Mr. Tannatt has an absolute right to a Declaratory Judgment proceeding in Massachusetts, and Varonis's motion to dismiss and to compel arbitration must be denied.

**B.   Varonis did not Sign its Own Noncompetition and Arbitration Agreement, and this Fact along with Material Changes to Mr. Tannatt's Job Render it Unenforceable.**

It is undisputed that arbitration can be compelled only when a valid written agreement exists between the parties. Here, no such contract ever existed, since Varonis did not sign the 2011 Agreement and is thus not bound by it. For this reason and because Mr. Tannatt did not sign new non-compete agreements after his job changed materially several times during his employment, no valid contract exists and arbitration cannot be compelled.

The threshold question whether a valid arbitration agreement exists is unquestionably one of Massachusetts law, since only valid written agreements to arbitrate are enforceable in the Commonwealth. Mass Gen. L. ch. 251, §1. Varonis's effort to apply New York law to that question must therefore be rejected. The validity of the 2011 Agreement necessarily involves consideration of Massachusetts public policy regarding noncompete agreements, since that is the sole matter at issue in the parties' dispute and Varonis seeks to block Mr. Tannatt from working in the Commonwealth. Any order that does this must, regardless where it issues, be enforced in

Massachusetts. Varonis thus cannot avoid Massachusetts law or its policies on noncompetition issues, as it attempts to do through its motion in this court, by applying New York law in a New York venue.[1]

In anti-competition cases, Massachusetts recently consolidated public policy in a statute that took effect October 1, 2018. Though specific rules in the law apply only to contracts signed on or after that date, the policies that underscore them are nonetheless relevant to noncompete agreements signed earlier, a point recently set out by the Massachusetts Supreme Judicial Court in a conflict of laws situation. "Although this statute applies only to contracts entered into, modified, or extended on or after January 1, 2017, see Cal. Lab. Code § 925(f), and consequently does not affect the agreement here, the enactment of the statute reflects a California public policy to protect employees who reside and work in California from being induced by an employer to agree to litigate in a forum outside of California." Oxford Global Resources, LLC v. Hernandez, 480 Mass. 462, 476-77 (2018). Indeed, provisions in the new Massachusetts law on noncompete agreements emanated from policies long applied to employees who reside or work here. The 2018 statute enacted certain of those public policies as law.

While several policies stated by the new statute may be relevant at some point in this dispute, only two are directly on point in the context of Varonis's motion to compel arbitration – a requirement that both employer and employee sign a written noncompete agreement, and another that requires agreements to expressly alert employees to their rights to obtain legal advice before signing them. Mass. Gen. L. ch. 149, §24L(b)(i).[2] See also McInnes v. LPL Fin.,

---

[1] The 2011 Agreement calls for New York law to the parties' disputes, but that choice of law is invalid because it will lead to violation of "fundamental public policy" of the Commonwealth, whose interest in the dispute is greater than New York's and whose law would apply but for the parties' choice. EMC Corp. v. Donatelli, 2009 WL 1663651 (Mass. Super., 2009). As Varonis argues in its motion, the application of New York law might violate fundamental Massachusetts policy by overriding the material change doctrine.

[2] The statute also bars choice of law provisions in noncompetition agreements that would circumvent the statute's requirements if the employee has lived or worked in Massachusetts for 30 days prior to the end of his/her

LLC, 466 Mass. 256, 260 (2013) ("where the *parties have executed* an arbitration agreement" that is not invalid on other grounds, it is enforceable) (*emphasis added*). In both these areas, Varonis failed, and its 2011 Agreement was never a valid contract. It never signed the document and, in fact, did not even provide itself a signature line. Varonis thus did not bind itself to any obligation to Mr. Tannatt, making its so-called contract a one-way document that does not satisfy either basic contract construction rules or the policy enumerated in the 2018 Massachusetts noncompete law. Neither did Varonis alert Mr. Tannatt to seek counsel before he signed the Agreement, a warning necessary to assure that employees understand the significance of restrictive covenants like the ones at issue here. There being no contract, there can be no arbitration on the point.

Even if this were not the case, Varonis's 2011 Agreement was terminated in 2015 when it promoted Mr. Tannatt to manager. Even before Massachusetts law is applied, Varonis's own contract makes this point clear. The supporting consideration it recited in 2011 was the hiring of Mr. Tannatt. Under basic common law, at-will employment rules – which are recited by Varonis in §1 of the 2011 Agreement – it could and did terminate Mr. Tannatt as a sales engineer in 2015. Varonis promptly rehired him into a wholly different managerial position, complete with supervisory authority and a new pay structure. The Agreement Mr. Tannatt signed in 2011 did not and was not intended to apply to his job as a manager. Neither was it intended to apply to the third job he assumed in 2016 or to the dramatically altered conditions of that job imposed by Varonis in 2018.

When it comes to the dramatic effects of restrictive covenants, Massachusetts makes clear that material work changes like the ones above require that new noncompetition

---

employment, Mass. Gen. L. ch. 149, §24L(e), and mandates that all noncompetition agreements be enforced in the county where the employee resides. Mass. Gen. L. ch. 149, §24L(f).

agreements be signed. Varonis's claims to the contrary notwithstanding, its 2011 Agreement

ended in 2015, again in 2016, and yet again in 2018, when it unilaterally altered Mr. Tannatt's

job and reduced his pay. "Each time an employee's employment relationship with the employer

changes materially such that they have entered into a new employment relationship, a new

restrictive covenant must be signed." Lycos, Inc. v. Jackson, 2004 WL 2341335 (Mass. Super.,

2004). Unilateral changes in an employee's pay may render a restrictive covenant invalid.

Mancuso-Norwak Ins. Agency, Inc. v. Rogowski-Verrette Ins. Agency, LLC, 2012 WL 6629644

(Mass. Super., 2012) (unilateral pay cut could be found by jury to be material breach that

invalidates noncompetition agreement). See also New England Canteen Serv., Inc. v. Ashley,

372 Mass. 671, 676, (1977) (unilateral alteration of agreement can be a breach that releases an

employee from contractual restrictions).

  Whether under basic contract principles, the at-will doctrine, or Massachusetts' material

change doctrine, Varonis's 2011 Agreement is invalid. The company cannot enforce its

noncompetition restrictions or its preference for arbitration to resolve them. There exists no valid

agreement to arbitrate anything, and Varonis's motion should be denied.

  **C. Varonis's Arbitration Clause is Invalid because it is Binding only on Mr. Tannatt
and Requires him to Pay Expenses and Appear in New York, Conditions that make
it Impossible for Mr. Tannatt to Defend Varonis's Suit.**

  Even if Varonis could somehow avoid the provisions of Mass. Gen. L. ch. 231A and

establish that its arbitration agreement constitutes an enforceable contract, it could not compel

Mr. Tannatt to arbitrate under the onerous terms it seeks to impose. The 2011 Agreement is void

first because it imposes on Mr. Tannatt an obligation to arbitrate that he could not impose on

Varonis. As it does so, Varonis's 2011 Agreement forces Mr. Tannatt to pay half of the

exorbitant expenses that will surely flow from an arbitration process and to appear in New York

City for hearings, discovery and other aspects of the litigation. These provisions will make it impossible for Mr. Tannatt to defend himself against Varonis's effort to knock him from the workforce. Its arbitration clause thus cannot be enforced.

While Massachusetts law generally permits the enforcement of valid arbitration agreements against its residents and has enacted an arbitration statute at Mass. Gen. L. ch. 251, arbitration clauses can be invalidated under contract principles that include unconscionability. "Substantive unconscionability occurs when contact terms are unreasonably favorable to one party." Buhrer v. BDO Seidman, LLP, 2003 WL 22049503 (Mass. Super., 2003). Courts have held that arbitration agreements are ineffective if they result in an inability of an employee to proceed with his/her claim. Machado v. System4 LLC, 465 Mass. 508, 514 (2013) (court may invalidate a class action waiver only if a plaintiff demonstrates an inability to pursue a statutory claim under the process required by contract). The JAMS arbitration service elected by Varonis to administer its process incorporates these principles in its employment arbitration rules, which bar an employer from forcing its employees to pay arbitration costs. JAMS also bars arbitration proceedings in locations that preclude an employee's "access" to the process.

Here, Varonis's arbitration motion must be rejected because the agreement on which it rests is unconscionable and cannot proceed under JAMS's rules in any event. By imposing on Mr. Tannatt an obligation to arbitrate to which it is not itself bound, Varonis's 2011 Agreement unreasonably favor its interests. Circumstances are made worse by arbitration terms that will force Mr. Tannatt to travel hundreds of miles from his residence and sole working location in Massachusetts to a venue in New York City, where no relevant conduct occurred and no material witnesses appear to reside. The result will be further benefit to Varonis, whose burden of arbitration will be minor while Mr. Tannatt's is so onerous that his participation will be

impractical. Mr. Tannatt cannot afford either the expense or the travel time away from his

job/family that will be required to reasonably defend himself in New York. Making matters

worse, he cannot afford to pay half the costs of arbitration, as Varonis's 2011 Agreement

requires. These expenses alone – which Varonis continues to seek to impose on Mr. Tannatt

despite JAMS's rules[3] – will make his defense impossible to present.

      Even, then, if Varonis's arbitration clause could be considered on its merits, arbitration

could not be ordered. The agreement is unconscionable and contravenes the substantive rules of

the arbitration service that Varonis chose to utilize. Mr. Tannatt would be unable to defend

himself in the proceeding, and his case should proceed in this court.

                                        Dana Tannatt,
                                        By his Attorneys,

                                        /s/ *Jack K. Merrill*
                                        _____
                                        Jack K. Merrill, BBO #564749
                                        KSR Law
                                        160 Gould Street, #102
                                        Needham, MA 02494
                                        781-418-5116
                                        jmerrill@ksrlawfirm.com

Date: January 7, 2018

      I hereby certify that a true copy of this motion was served upon the attorneys of record
for each party through the court's CM/ECF notification system this date, January 7, 2019.

                                          /s/ *Jack K. Merrill*
                                        _____
                                        Jack K. Merrill

---

[3] JAMS ordered Varonis to pay almost all arbitration fees, but Varonis challenges that decision.