UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANA TANNATT )
)
Plaintiff, )
)
v. )          CIVIL ACTION
)          NO. 18-12589-JGD
VARONIS SYSTEMS, INC. )
)
Defendant. )

# MEMORANDUM OF DECISION AND ORDER ON
# DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

February 21, 2019

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Dana Tannatt, brought this action against his former employer Varonis

Systems, Inc. ("Varonis") over the validity of his employment agreement.  The plaintiff's suit

was originally filed in state court, but Varonis removed the action to this court on the basis of

diversity jurisdiction.  (See Docket No. 1).  As alleged in the Complaint, Tannatt seeks a

declaratory judgment, pursuant to Mass. Gen. Laws ch. 231A, that his employment agreement

is no longer in effect, is void, and/or is unenforceable, or, in the alternative, that Varonis is

barred from enforcing any restrictive covenants contained within the employment agreement.

The Complaint also seeks an order to enjoin arbitration proceedings that Varonis has initiated in

New York.

This matter is before the court on "Defendant Varonis Systems, Inc.'s Motion to Dismiss and Compel Arbitration."  (See Docket No. 6).  As discussed herein, the defendant has established that a valid arbitration provision exists which delegates the threshold issue of arbitrability to an arbitrator.  Therefore, the defendant's motion to dismiss and compel arbitration is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion is ALLOWED as to a determination on the threshold issue of arbitrability and the case is stayed pending the arbitrator's decision on arbitrability.  The motion is otherwise DENIED.

## II.  STATEMENT OF FACTS

This court summarizes the facts as alleged in the plaintiff's complaint.  Varonis is a Delaware corporation with its principal place of business in New York.  (Docket No. 1-1 ("Complaint") ¶ 2).  The company does business in Massachusetts but does not maintain any offices in the state.  (See id. ¶ 5).  Varonis hired Tannatt in 2011 as a sales engineer.  (Id. ¶ 4).  Tannatt worked out of his home in North Andover.  (Id. ¶ 5).  As a condition of his employment, Tannatt signed a document called "Varonis Systems, Inc. At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement" ("Agreement") on or about December 13, 2011.  (Id. ¶ 6; Docket No. 1-1, Ex. A).  The Agreement includes restrictive covenants not to compete with Varonis or solicit any of its customers for a period of 12 months following the termination of Tannatt's employment with Varonis.  (See Complaint ¶ 7).  The Agreement also states that the plaintiff agrees to arbitrate "any and all controversies, claims, or disputes . . . arising out of, relating to, or resulting from [Tannatt's] employment with [Varonis] . . . ."  (Agreement at 9).  Under the Agreement, any such arbitration is to be administered by

Judicial Arbitration & Mediation Services, Inc. ("JAMS") in New York, pursuant to New York law[1]

and JAMS's "Employment Arbitration Rules & Procedures" ("JAMS Rules"). (Id.). Further, the

Agreement provides that "arbitration shall be the sole, exclusive, and final remedy for any

dispute between [Tannatt] and [Varonis]." (Id. at 10). The Agreement does provide, however,

that "any party may also petition the court for injunctive relief where either party alleges or

claims a violation of the at-will employment, confidential information, invention assignment,

and arbitration agreement between [Tannatt] and [Varonis] or any other agreement regarding

trade secrets, confidential information, noncompetition or nonsolicitation." (Id.).[2]

    In 2015, Tannatt was promoted to the position of manager of sales engineering.

(Complaint ¶ 11). As part of his promotion, he took on additional responsibilities, received a

salary increase, and performed far less sales engineering work himself. (Id.). Approximately

one year later, Tannatt was told to choose between working exclusively as a manager or

focusing entirely on sales engineering work. (Id. ¶ 12). He chose the latter option and resigned

his management position. (Id.). As a result, his duties reverted to those he had prior to his

promotion, but his salary remained the same. (Id.). In January 2018, Tannatt was reassigned to

a new sales representative, which caused his sales production numbers to drop. (Id. ¶¶ 13, 14).

At no point did Tannatt sign a new employment agreement or restrictive covenant in

---

[1] The Agreement separately contains a New York choice of law provision to govern the entire Agreement without regard to New York's conflicts of law rules. (Agreement at 11).

[2] This court notes that while the Complaint indicates that the plaintiff is seeking an injunction of the arbitration proceedings, the plaintiff has not filed a motion for a preliminary injunction or made any reference to the injunction in his opposition to the motion to compel arbitration. Nor has the plaintiff otherwise invoked the "injunctive relief" language from the Agreement in support of his position, likely because such relief is limited to claimed *violations* of certain provisions in the Agreement.

connection with these changes to his job responsibilities. (See id. ¶¶ 11-13). However, the Agreement does state that "[a]ny subsequent change or changes in [Tannatt's] duties, salary, or compensation will not affect the validity or scope of this Agreement." (Agreement at 11).

In July 2018, Tannatt resigned from Varonis and began a new job with SailPoint Technologies, Inc. ("Sailpoint"). (Complaint ¶ 15). Varonis sent a letter to the plaintiff which asserted that SailPoint was a competitor and sought to enforce the non-competition provision of the Agreement. (Id. ¶ 17). Tannatt refused to resign from SailPoint. (Id. ¶ 18). Pursuant to the Agreement's arbitration provision, Varonis submitted a demand for arbitration to JAMS in New York, alleging two counts of breach of contract. (Id. ¶ 18; see Docket No. 1-2 at 15-16).

In response, Tannatt filed this declaratory judgment action. He contends not only that the Agreement is entirely unenforceable due to substantial changes in his employment since he signed the contract, but also that arbitration in New York would preclude him from effectively defending against claims by Varonis.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

The Federal Arbitration Act (FAA) applies to any "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . ." 9 U.S.C. § 2. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 113, 121 S. Ct. 1302, 1308, 149 L. Ed. 2d 234 (2001) (holding that employment contracts are within the scope of § 2 of the FAA). Under the FAA, a court must determine whether a valid arbitration agreement exists before referring the dispute to an arbitrator. Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). This inquiry is separate and severable

from the issue of whether the contract as a whole – or other provisions contained therein – is valid.  See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444-46, 126 S. Ct. 1204, 1208-09, 163 L. Ed. 2d 1038 (2006).

## Right to Pursue a Declaratory Judgment Action

As an initial matter, the plaintiff contends that the FAA does not eclipse his right to bring, and pursue to conclusion, a declaratory judgment action separate and apart from the arbitration proceedings.  The plaintiff is mistaken.  Section 2 of the FAA embodies "a national policy favoring arbitration," and with its passage, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."  Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984).  In other words, bringing a claim via a declaratory judgment action does not allow a litigant to evade the FAA if the underlying dispute falls within the reach of the arbitration provision.  See Aeronaves de Mexico, S. A. v. Triangle Aviation Servs., Inc., 389 F. Supp. 1388, 1391 (S.D.N.Y. 1974), aff'd, 515 F.2d 504 (2d Cir. 1975)  ("Where the issues in an action for a declaratory judgment parallel and duplicate the issues appropriately before the arbitrators, the Court may dismiss the action or deny all relief, or declare and enforce defendant's rights to arbitrate.").

## Choice of Law

In evaluating the existence of a valid arbitration provision, courts "apply 'general state-law principles of contract interpretation.'"  PaineWebber Inc. v. Elahi, 87 F.3d 589, 600 (1st Cir. 1996) (quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford, Junior Univ., 489 U.S. 468, 475-76, 109 S. Ct. 1248, 1254, 103 L. Ed. 2d 488 (1989)).  Here, the plaintiff urges this court

to apply Massachusetts law, despite the fact that the Agreement explicitly calls for the application of New York law.  He argues that the application of New York law would allow Varonis to circumvent the application of Massachusetts's "material change rule," which limits the enforceability of restrictive covenants in the Commonwealth.  He also argues that Massachusetts has a strong policy interest in seeing its own law on non-competition agreements applied, as exemplified by the recent passage of the Massachusetts Noncompetition Agreement Act.  See Mass. Gen. Laws ch. 149, § 24L.

Where parties "have expressed a specific intent as to the governing law" in a contractual agreement, "Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy."  Oxford Glob. Res., LLC v. Hernandez, 480 Mass. 462, 468, 106 N.E.3d 556, 564 (2018) (internal quotations and citations omitted).  The application of a contract's choice of law provision is only contrary to Massachusetts public policy if:

> '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) [where] application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state [in the determination of the particular issue]' and is the State whose law would apply . . . 'in the absence of an effective choice of law by the parties.'

Id. at 468-69 (quoting Hodas v. Morin, 442 Mass. 544, 550, 814 N.E.2d 320, 325 (2004)) (alterations in original).  New York certainly has a substantial relationship to the parties here, as the defendant's principal place of business is in New York, Tannatt occasionally attended meetings in the New York office, and the defendant asserts that Tannatt's sales territory included upstate New York.  (Complaint ¶¶ 2, 5; Docket No. 18-1).  Thus, the question is whether application of New York law would be contrary to a "fundamental" Massachusetts policy.

The plaintiff first contends that applying New York law here would allow Varonis to avoid Massachusetts's "material change rule." Massachusetts courts have occasionally invoked the material change rule to bar the enforcement of restrictive covenants in employment agreements. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 16 (1st Cir. 2009). Under this rule, "a non-solicitation agreement or covenant not to compete may be deemed void if there are material changes in the employment relationship between the employee and his or her employer." Akibia, Inc. v. Hood, No. SUCV201202974F, 2012 WL 10094508, at *7 (Mass. Super. Oct. 9, 2012), aff'd, No. 12-J-390, 2012 WL 12370255 (Mass. App. Ct. Nov. 21, 2012), and cases cited. Even assuming, arguendo, that the material change rule is applicable in the instant case, it is not relevant to the initial inquiry whether the parties' Agreement contains a valid arbitration provision. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 72, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010) (". . . unless [the plaintiff] challenged the [arbitration] provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); see also Buckeye Check Cashing, Inc., 546 U.S. at 449, 126 S. Ct. at 1210 ("a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). Thus, the material change rule does not address the threshold issue of whether a valid arbitration agreement exists.

The plaintiff also contends that Massachusetts's new Noncompetition Agreement Act, which only applies to non-competition agreements entered into on or after October 1, 2018, consolidated existing Massachusetts public policy on non-competition agreements and should be deemed to reflect a strong Massachusetts public policy against enforcement of non-

competition agreements like those at issue here. Specifically, the plaintiff points to the new statute's requirement that, for a non-competition agreement entered into in connection with the commencement of employment to be valid and enforceable, "it must be in writing and signed by both the employer and employee and expressly state that the employee has the right to consult with counsel prior to signing." Mass. Gen. Laws ch. 149, § 24L(b)(i). As an initial matter, the plaintiff fails to cite any case law in support of the proposition that these requirements already existed at common law prior to the passage of the Noncompetition Agreement Act so that these requirements could be considered applicable to the plaintiff's Agreement. Further, as with the material change rule, the plaintiff fails to advance arguments that these requirements pertain to the validity of the arbitration provision, rather than the validity of the contract as a whole.

Accordingly, for the purpose of deciding whether a valid arbitration provision exists, this court will apply New York law, as it is expressly called for under the contract and its application in this context does not appear to violate any Massachusetts public policy. At this stage of the analysis, the court need not reach the issue of whether New York or Massachusetts law should apply to the substantive issues in the underlying dispute.

### Existence of Valid Arbitration Provision

Having decided the appropriate choice of law for the arbitration analysis, this court next moves to the question of whether a valid arbitration provision exists. The plaintiff contends that the arbitration provision is itself unconscionable. He asserts that it unreasonably favors Varonis's interests by imposing a unilateral arbitration obligation on the plaintiff which forces him to travel to New York for arbitration proceedings that he cannot afford. Under New York

law, an arbitration provision must be both procedurally and substantively unconscionable to be unenforceable.  See Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).  The plaintiff does not appear to make an argument as to the arbitration provision's procedural unconscionability, but even his argument as to its substantive unconscionability fails.  Contrary to the plaintiff's assertion that the arbitration provision imposes an obligation on the plaintiff "to which [Varonis] is not itself bound," the plain text of the provision states that Varonis's "promise to arbitrate all employment-related disputes" serves as consideration for the plaintiff's agreement to do the same.  (See Docket No. 13 at 8; Agreement at 9).  To remove any doubt, the very last sentence of the first paragraph in the arbitration provision states that "I further understand that this agreement to arbitrate also applies to any disputes that the company may have with me."  (Agreement at 9).  Accordingly, the provision equally binds both parties to arbitration.  See Nayal, 620 F. Supp. 2d at 573.

The arbitration provision also expressly provides that arbitration is to be administered by JAMS.  Under JAMS policy, "[a]n employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration."  See JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness at 4, https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Employment_Min_Stds-2009.pdf.  The parties have represented to the court that JAMS has already ruled that Varonis is responsible for almost all arbitration fees.  (See Docket No. 13 at 9 n.3; Docket No. 18 at 12).  At a hearing before this court on February 6, 2019, the parties indicated that the location for the arbitration had not yet been determined by the arbitrator.  Thus, the plaintiff cannot fairly say that the arbitration provision contains

unconscionable terms as to the location or cost of arbitration. Accordingly, the plaintiff has failed to demonstrate that the arbitration provision is unconscionable.

The plaintiff also makes a number of arguments challenging the validity of the entire contract, arguing that the contract as a whole is unconscionable, that the contract is unenforceable because Varonis did not sign it, and that Varonis failed to instruct the plaintiff of his right to seek counsel. However, "a challenge to the validity of the contract itself is subject to arbitration and that allocation of authority to the arbitrator will . . . be respected by the court." Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 10 (1st Cir. 2009); see Rent-A-Ctr., W., Inc., 561 U.S. at 70-71, 130 S. Ct. at 2778 ("a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").

**Authority to Decide Arbitrability**

Having found that a valid arbitration provision exists, this court must determine whether the question of arbitrability has been delegated to the arbitrator before the court may reach the issue itself. See Henry Schein, Inc., 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." (citation omitted)). If there exists "clear and unmistakable" evidence that the question of arbitrability was delegated to the arbitrator, this court must compel arbitration on the question of whether the dispute should be arbitrated. Id.

On its face, the arbitration provision does not make explicit reference to whether the issue of arbitrability is for the arbitrator to decide. However, the arbitration provision does explicitly incorporate the JAMS Rules. Rule 11(b) of the JAMS Rules states that "arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." See JAMS Employment Arbitration Rules & Procedures at 12, https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_employment_arbitration_rules-2014.pdf. By incorporating the JAMS Rules into the arbitration provision, the parties agreed to be bound by rules that clearly and unmistakably provide for the arbitrator to determine arbitrability. See Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473-74 (1st Cir. 1989) (holding that arbitration provision's incorporation of International Chamber of Commerce rules, which provide arbitrator with authority to decide arbitrability, constituted clear and unmistakable evidence); see also Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C., 77 F. Supp. 3d 237, 248-49 (D. Mass. 2015). Accordingly, the arbitration provision has delegated the question of arbitrability to the arbitrator.

## IV. **CONCLUSION**

For all the reasons detailed above, "Defendant Varonis Systems, Inc.'s Motion to Dismiss and Compel Arbitration" (Docket No. 6) is ALLOWED IN PART and DENIED IN PART. Specifically, the motion to compel arbitration is ALLOWED as to the threshold issue of arbitrability and the case is stayed pending the outcome of the arbitrator's decision on arbitrability. The parties shall promptly advise the court when the arbitrator has made a decision as to the arbitrability of the parties' dispute. The motion is otherwise DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge